## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| NAVAIR, INC., | ) | |
| | ) | |
| Plaintiff, | ) | **CIVIL ACTION** |
| | ) | |
| v. | ) | No. 04-1023-MLB |
| | ) | |
| IFR AMERICAS, INC., | ) | |
| IFR SYSTEMS, INC., and | ) | |
| AEROFLEX, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM AND ORDER</u>

This matter comes before the court on cross motions for summary judgment. (Docs. 80, 84.)  The matter has been fully briefed and is ripe for decision.  (Docs. 81, 82, 85, 87, 88, 89, 91, 95, 96, 97, 98.)  For the reasons stated herein, plaintiff's motion for partial summary judgment is DENIED and defendants' motion for summary judgment is GRANTED.

## I.  FACTS

Plaintiff Navair, Inc. ("Navair") brought suit against defendants IFR Americas, Inc., IFR Systems, Inc., and Aeroflex, Inc. (collectively referred to as "IFR")[1] alleging breach of contract, tortious interference with a prospective business relationship, fraud, negligent misrepresentation,[2] and breach of fiduciary duty.  Navair, a distributor and servicer of electronic test and measurement

---

[1]   IFR Americas, Inc. is a wholly-owned subsidiary of IFR Systems, Inc., which is a wholly-owned subsidiary of Aeroflex, Inc.

[2]   Navair's complaint alleges negligence (Doc. 1 at 10), but the parties' pretrial order addresses the complaint as one for negligent misrepresentation (Doc. 79 at 16).  The court does the same.

equipment, is incorporated and has its principal place of business in the Province of Ontario, Canada. Defendant IFR Systems, Inc., based in Wichita, Kansas, manufactures electronic test and measurement equipment. Prior to 2003, Navair was IFR's exclusive distributor of products in Canada for approximately thirty years.

In October 2001, IFR and Navair entered into a written distributor agreement for a one-year term, commencing October 8, 2001 and expiring October 8, 2002 ("Distributor Agreement"). Pursuant to the terms of the Distributor Agreement, IFR sold its products to Navair in accordance with orders placed by Navair. Navair bought products and sold them to customers in its own name and for it own account, acting as an independent trader. The Distributor Agreement has a "Competitive Dealing" provision, which states: "The Distributor [Navair] will not represent, manufacture, distribute, sell or promote the sale of or otherwise deal in the Territory [Canada] in any products competitive with the Products [IFR Products] directly or indirectly or in any manner whatsoever, during the Term [October 8, 2001 to October 8, 2002]."

In August 2002, Navair provided the Canadian Department of National Defense a price quote for fifteen radio test units to be used to support a two-way radio communication system known as the Integrated Radio Information System ("IRIS"). On October 8, 2002, the date the Distributor Agreement terminated, IFR provided Navair written notification it had decided not to extend the Distributor Agreement and would be discontinuing its distributor relationship with Navair on October 31, 2002. In response to this notice, Navair requested IFR

-2-

provide it with a sixty day[3] transition period during which time IFR would honor all outstanding Navair quotations.   Navair specifically referenced the outstanding quote it had with the Canadian Department of National Defense for the IRIS program.

On December 12, 2002, the parties entered into a new written agreement (the "December Agreement") which provided, in pertinent part: "IFR will protect Navair on all orders received during the period November 1, 2002 through December 31, 2002 that are referenced on Appendix A."  The attached Appendix A included, among other quotes, the quote Navair had provided to the Canadian Department of National Defense for the fifteen IRIS test units.  The December Agreement also provided that "IFR reserves the right to alter the terms of the agreement if Navair represents any companies that are in direct conflict with IFR products."  Both parties understood this provision to mean that IFR could alter the terms of the December Agreement if Navair represented any companies that were in conflict with any IFR products.

On December 17, 2002, Navair informed IFR that the IRIS test

---

[3]   In its response to IFR's motion for summary judgment, Navair states that the ". . . original Distributor Agreement contemplated a six-month winding down period . . . ." (Doc. 88 at 12.)  The October 8, 2001 IFR Americas, Inc. Distributor Agreement (Doc. 84, Exh. E) provides, as a consequence of termination, that Navair will provide, ". . . for agreement by IFR, a list of outstanding quotations . . ." and that Navair will, ". . . providing he continues to undertake the responsibilities set out . . . be entitled to receive for a further period of six calendar months as per the commission scheduled."

The relevance of this portion of the Agreement is not altogether clear and the parties have not discussed it.  In any event, in its response to IFR's notice of termination, Navair asked for a "sixty day" transition period beginning November 1, 2002 (Id. Exh. G).  IFR honored this request which was effectively incorporated in the December Agreement.

units had been requisitioned by the Canadian Department of National Defense and now needed to go through the procurement process.  As of December 31, 2002, Navair did not place an order for the fifteen test units that had been quoted to the Canadian Department of National Defense for the IRIS program.

On January 14, 2003, Navair informed IFR that Navair thought it would have the order from the Canadian Department of National Defense within two weeks, i.e., by January 28, 2003.  On January 15, 2003, at Navair's request, IFR sent a letter to the Canadian Department of National Defense stating that "Navair is the authorized supplier for said [IRIS] order" and that January 31, 2003 was the date by which the order would need to be received in order for delivery to take place by March 31, 2003.  Also in mid-January 2003, Navair and IFR discussed and agreed that IFR would continue to provide protection to Navair for the quote on the test units for the IRIS program.  There was no written agreement setting forth an expiration date for the agreement to extend the protection of Navair's quote with respect to the IRIS program.

On January 22, 2003, Navair told IFR that a Canadian government official had informed Navair that additional procedures were required with respect to the IRIS order, which were expected to take an additional five to six weeks.  On January 23, 2003, IFR internally began discussing terminating the IRIS program agreement with Navair and on January 29, 2003, IFR informed an official with the Canadian government that Navair was no longer the exclusive distributor of IFR products in Canada and instructed the official to "direct the IRIS requirement to Testforce Systems Inc."

-4-

On January 30, 2003, IFR sent a letter to Navair stating IFR was discontinuing representation by Navair for the IRIS program, effective February 1, 2003.  IFR also stated:

> Our reasons are as follows:
>
> > A number of companies now being represented by Navair are direct competitors of IFR.
> >
> > The IRIS requirement in question will not be purchased through your support contract.
>
> > We will be notifying the [Department of National Defense] of this change and that Testforce Systems Inc is the official representative/agent for Canada.

Navair did not enter into a contract with the Canadian Department of National Defense in regard to the IRIS program.  As of February 5, 2003, the Canadian Department of National Defense intended to award the contract to supply the IRIS program products to Testforce Systems, Inc.

Navair seeks partial summary judgment in its favor on the breach of contract claim and asks for the award of the eighteen percent commission it would have received under the December Agreement, plus interest.  IFR seeks summary judgment in its favor on all of Navair's claims.  There is apparently no dispute over the governing law as both parties cite Kansas law in their briefs and have agreed in their pretrial order that the substantive issues of the case are governed by Kansas law.  (Doc. 79 at 2.)

## II.  ANALYSIS

Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is

-5-

entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).
An issue is "genuine" if sufficient evidence exists "so that a
rational trier of fact could resolve the issue either way" and "[a]n
issue is 'material' if under the substantive law it is essential to
the proper disposition of the claim." <u>Adler v. Wal-Mart Stores, Inc.</u>,
144 F.3d 664, 670 (10th Cir. 1998).  When confronted with a fully
briefed motion for summary judgment, the court must ultimately
determine "whether there is the need for a trial—whether, in other
words, there are any genuine factual issues that properly can be
resolved only by a finder of fact because they may reasonably be
resolved in favor of either party." <u>Anderson v. Liberty Lobby, Inc.</u>,
477 U.S. 242, 250 (1986).  If so, the court cannot grant summary
judgment. <u>Prenalta Corp. v. Colo. Interstate Gas Co.</u>, 944 F.2d 677,
684 (10th Cir. 1991).  If sufficient evidence exists on which a trier
of fact could reasonably find for the plaintiff, summary judgment is
inappropriate.[4] <u>See Prenalta Corp. v. Colorado Interstate Gas Co.</u>, 944

---

[4] Even though the parties have filed cross-motions for summary
judgment, the legal standard does not change. <u>See</u> <u>O'Connor v. Check
Rite, Ltd.</u>, 973 F. Supp. 1010, 1014 (D. Colo. 1997); <u>United Wats, Inc.
v. Cincinnati Ins. Co.</u>, 971 F. Supp. 1375, 1382 (D. Kan. 1997).  It
remains this court's sole objective to discern whether there are any
disputes of material facts. <u>See</u> <u>Harrison W. Corp. v. Gulf Oil Co.</u>,
662 F.2d 690, 692 (10th Cir. 1981).  The court is, however, justified
in assuming that no evidence needs to be considered apart from what
has been filed. <u>See</u> <u>James Barlow Family Ltd. P'ship v. Munson, Inc.</u>,
132 F.3d 1316, 1319 (10th Cir. 1997).
     Additionally, the Tenth Circuit has made it clear that each
motion is to be treated separately – the denial of one does not
require the granting of the other. <u>See</u> <u>Atl. Richfield Co. v. Farm
Credit Bank of Wichita</u>, 226 F.3d 1138, 1148 (10th Cir. 2000) (quoting
<u>Buell Cabinet Co. v. Sudduth</u>, 608 F.2d 431, 433 (10th Cir. 1979));
<u>Abbot v. Chem. Trust</u>, No. 01-2049-JWL, 2001 WL 492388, at *4 n.11 (D.
Kan. Apr. 26, 2001).  Rather, this court must hold each party to their
respective burden depending upon their status as a moving or nonmoving
party and whether they would have the burden of proof on a particular
issue at trial . <u>See</u> <u>Stewart v. Nationalease of Kansas City, Inc.</u>,

F.2d 677, 684 (10th Cir. 1991).

A.   BREACH OF CONTRACT

Navair alleges IFR breached the December Agreement, as modified by the January discussions, when IFR "terminated Navair as the exclusive distributor of the IRIS program products." (Doc. 79 at 13.) IFR responds it did not breach the December Agreement and Navair cannot prove an oral modification of the December Agreement because there was no meeting of the minds with respect to essential terms and valid consideration was not given.   (Doc. 85 at 11.)

Under Kansas law, to succeed on a claim for breach of contract, a plaintiff must prove: "(1) the existence of a contract between the parties; (2) consideration; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) defendant's breach of the contract; and (5) that plaintiff was damaged by the breach."   Britvic Soft Drinks Ltd. v. Acsis Techs., Inc., 265 F. Supp.2d 1179, 1187 (D. Kan. 2003).

The parties do not dispute that when they signed the December Agreement, a valid contract was formed under Kansas law.   The parties also agree that there was an oral extension of the quote protection authorized in the December Agreement.   The dispute between the parties arises because there was no written agreement setting forth an

---

920 F. Supp. 1188, 1202 (D. Kan. 1996).
     In this case, Navair's motion for partial summary judgment on its breach of contract claim and IFR's motion for summary judgment on Navair's contract claim, for all practical purposes are mirror images. Indeed, in opposing IFR's motion, Navair refers the court to portions of its own motion for partial summary judgment.   Thus, although the court has thoroughly considered Navair's motion, no useful purpose will be served by an extended separate discussion of the arguments raised by Navair.

expiration date for the oral agreement to extend the protection of Navair's quote with respect to the IRIS program.

The exact length of the extension of the December Agreement was never agreed upon. IFR alleges neither party discussed "exactly how long that protection was going to extend." (Doc. 85 at 6.) As support for this statement, IFR points to the deposition of Navair's president, wherein the following colloquy occurs:

> Q: Did Mr. Ursprung ever say anything to you about how long IFR was going to protect Navair on its quote to the DND?
>
> A: No.
>
> Q: To make sure I understand you correctly, would it be fair to say that based on your recollection, there were discussions that you had with Mr. Bloomer that IFR would continue to provide some protection to Navair with regard to the quote on the IRIS units, but there was never any discussion by either one of you as to exactly how long that protection was going to extend?
>
> A: That's correct.
>
> Q: And you assumed it to be for a reasonable time?
>
> A: Uh-Huh.
>
> Q: But - and you - depending on the circumstances, it might depend on what a reasonable time might be, correct?
>
> A: Yes. Depending on the fact that the process was moving forward, within one's expectations of how Government wheels move, yes. I - there was no - never any discussion of any deadline.

(Doc. 85, Exh. A at 60-61.) Deposition testimony of IFR's representatives showed that it was IFR's expectation that the extension was given until January 31, 2003. (Doc. 85, Exh. D at 124.)

Navair nonetheless alleges "it was understood by all parties that

finalization of the IRIS program order was awaiting completion of the [Department of National Defense] procurement process, which was underway." (Doc. 88 at 3.) As support for this statement, Navair points to an email between the parties dated January 14, 2003. The email, addressed to a representative of IFR from a representative of Navair, states, in pertinent part: "I need your help on the IRIS order. The Government has asked us to provide a letter confirming that we are your sales agent on this order. A simple one liner "TO WHOM IT CONCERNS" or to the Canadian Department of National Defense would suffice. If you could fax it to Navair that would speed things up. I think we will have the order within two weeks." (Doc. 81, Exh. 17.)

The email does lend support to Navair's statements that the IRIS order was being held up by the Canadian Department of National Defense (which is not in dispute anyway), but the support ends there. Navair mistakenly believes that "proof" that the IRIS order could not be completed until the Canadian Department of National Defense gave approval somehow equates to proof that its "understanding" with IFR was extended to the same unspecified future date. The email also shows that as of mid-January, IFR was willing to continue to work with Navair on this endeavor. However, what the email does not prove is that the parties had a <u>contract</u> for IFR to continue to protect Navair on the IRIS quotes until the Canadian Department of National Defense awarded the IRIS order to Navair.

The December Agreement, by its very terms, ended on December 31, 2002. Without proof that the Agreement was extended in the manner Navair claims, Navair's breach of contract claim fails. Navair points

-9-

only to evidence that Navair's president thought the December Agreement had been extended for a "reasonable time" and to the evidence that IFR represented in mid-January that Navair was the IRIS distributor.  These facts alone do not show a contract, nor do they create an issue for trial.  It is undisputed that IFR was willing to protect Navair's price quotations until January 31, 2003, but there is no evidence the parties had any agreement, understanding, or contract beyond that date.[5]  The undisputed evidence also shows IFR did not determine to finally end its relationship with Navair until January 23, 2003, when Navair told IFR it did not expect the Canadian Department of National Defense to make an award on the IRIS units for an additional five to six weeks.  There is nothing in the evidence which would support an understanding, agreement, or contract between the parties that IFR would continue to "protect" Navair of that additional period.

Thus, despite taking all the facts in the light most favorable to Navair, it is undisputed that the parties did not have a meeting of the minds with respect to an extension of the December Agreement beyond January 31, 2003.  See Sidwell Oil & Gas v. Loyd, 230 Kan. 77, 79, 630 P.2d 1107, 1110 (1981)("In order for parties to form a binding contract, there must be a meeting on the minds as to all essential terms.").  As Navair points out, the test for determining a meeting of the minds is an objective one.  See Sw. & Assocs., Inc. v. Steven Enters., 32 Kan. App. 2d 778, 781, 88 P.3d 1246, 1249 (Kan. Ct. App.

---

[5]  It is worth noting that the same parties who took the care to memorialize the extension of the October 2001 agreement with the December Agreement did not memorialize what is now contended to be a further extension.

2004)(stating that the question of whether a contract has been formed focuses on "outward expressions of assent").  Navair correctly notes that IFR's subjective belief regarding when the extension of the protection agreed under the December Agreement would end is irrelevant.  Likewise, Navair's belief that the protection would extend for a "reasonable time" is equally subjective and irrelevant. Navair has pointed to no objective evidence that a contract was, in fact, executed.

Instead, Navair argues that "a specific deadline for completion of the IRIS Program does not defeat the existence of an agreement" and argues that a "reasonable time" should be implied by the court.  (Doc. 88 at 11.)  In support of this contention, Navair points the court to Arnold v. S.J.L. of Kansas Corp., 249 Kan. 746, 822 P.2d 64 (1991) and Arrowhead Constr. Co. v. Essex Corp., 233 Kan. 241, 662 P.2d 1195 (1983), abrogated on other grounds by Wichita Sheet Metal Supply, Inc. v. Dahlstrom and Ferrell Constr. Co., Inc., 246 Kan. 557, 792 P.2d 1043 (1990).

Navair's reliance on these cases is misguided.  In Arnold, the parties entered into a written agreement regarding an employment promotion, but conditioned the timing of the obligations under that agreement.  249 Kan. at 749, 822 P.2d at 67.  The parties in Arnold agreed that Arnold would be promoted to a chief photographer position when the current chief photographer stepped down.  In those circumstances, the court was willing to impose a reasonable time of performance or a reasonable time for the occurrence of the necessary event.  In this case, there is no written or oral agreement offering protection until some condition is satisfied.  For example, if there

was evidence of an agreement that "IFR will protect the IRIS quotations until such time as the IRIS contract is awarded," then <u>Arnold</u> would apply and the court could impose a reasonable time for the completion of that condition.  Navair points to no such evidence.

Similarly, <u>Arrowhead Constr.</u> is also inapplicable.  In <u>Arrowhead Constr.</u>, the court stated:

> Here the evidence clearly shows the parties intended to be bound by a contract.  They discussed the particulars of the project beforehand, [employees] began work, a representative of Arrowhead visited with them at the project site where [employees] informed him of their requested price, and [employees] continued working with no objection from Arrowhead.

Under those circumstances, the court found the trial court's application of a reasonable price term to be appropriate.  233 Kan. at 249-50, 662 P.2d at 1202.  Navair points only to evidence in the December Agreement regarding the particulars and agreements of the parties to be bound, but points to no particulars regarding an extension, much less an extension beyond January 31, 2003.

Because the court has found that Navair has not shown that the parties contractually agreed to an extension of the December Agreement beyond the end of January 2003, Navair's breach of contract claim fails, because that is when the contract, had one existed, would have been breached.  The parties' contentions regarding whether IFR was justified in terminating their relationship with Navair at the end of January 2003 are not relevant.  Thus, the court will not consider whether Navair was precluded from competing with IFR on only the IRIS Program or on all IFR products, and will also not consider whether Navair was, in fact, competing through a relationship between Navair

-12-

and other entities.[6]  Navair's partial summary judgment motion on its breach of contract claim is DENIED and IFR's motion for summary judgment on Navair's breach of contract claim is GRANTED.

B.   TORTIOUS INTERFERENCE WITH A PROSPECTIVE BUSINESS RELATIONSHIP

Navair's second claim alleges IFR tortiously interfered with Navair's prospective business relationship.   Navair alleges IFR "intentionally and maliciously removed Navair as the exclusive distributor of the IRIS Program products and substituted Navair with Testforce Systems, Inc."  (Doc. 79 at 13.)   IFR moves for summary judgment on this claim contending Navair cannot show the requisite elements of the claim because the only information IFR communicated was truthful.

Under Kansas law, to prevail on a claim for tortious interference with a prospective business relationship, a plaintiff must show: "(1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or expectancy by the defendant; (3) that, except for the conduct of the defendant, plaintiff was reasonably certain to have continued the relationship or realized the expectancy; (4) intentional misconduct by defendant; and (5) damages suffered by plaintiff as a direct or proximate result of defendant's misconduct." Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc., 431 F.3d

---

[6]   Because the court finds there was no agreement between the parties beyond January 31, 2003, and because IFR did not end the relationship with Navair until the end of January, 2003, the court need not consider whether IFR had justification for ending its relationship with Navair.   Consequently, IFR's motion asking for a ruling on the admissibility of so-called "after-acquired evidence" of a contract breach by Navair (Doc. 66) is rendered moot.

1241, 1263 (10th Cir. 2005) as amended on rehearing in part (Apr. 11, 2006) (citation omitted).   "To establish a tortious interference claim, a plaintiff must show that defendant acted with malice.   In Kansas, malice is defined as 'actual evil-mindedness or specific intent to injure.'"  Id. (internal citations omitted).

Navair alleges it has shown the first, second, third, and fifth elements, but that there is a genuine issue of material fact with regard to element four and the requirement of malice.  (Doc. 88 at 13.)  In its motion, IFR contends element four has not and cannot be proved by Navair because Navair has no evidence the "IFR knowingly made untruths with the intent to deceive" or "engaged in intentional and malicious conduct."  (Doc. 85 at 16.)

Navair responds that malice exists because, "defendants, after a thirty-year business relationship with plaintiff, intentionally gave plaintiff repeated assurances in the form [of] written and oral extensions and the January 15, 2003 letter to the DND of their intent to continue under the distribution agreement with respect to the IRIS Program while never mentioning any particular deadline, allowed the plaintiff to do all the leg work to secure the sale, then wrongfully cancelled the extended distribution agreement without reasonable notice to the plaintiff. . . ."  (Doc. 88 at 14.)

Navair's allegation fails as a matter of law to create a genuine issue of material fact with regard to this essential element of its claim.  Accepting the facts alleged by Navair, the most IFR did was breach a contract without notice to Navair in advance of the breach. In Kansas, proof of malice requires "actual evil-mindedness or specific intent to injure" and a contract breach does not rise to this

-14-

level.  See L&M Enters. v. BEI Sensors and Sys. Co., 231 F.3d 1284, 1288 (10th Cir. 2000)(requiring a showing of malice for a tortious interference claim based on breach of contract).  A claim for breach of contract should be addressed under contract principles, not tort principles.  See Battenfeld of America Holding Co., Inc. v. Baird, Kurtz & Dobson, 60 F. Supp. 2d 1189, 1205 (D. Kan. 1999)(stating that under Kansas law, when the cause of action arises from "a breach of specific terms of the contract, without any reference to the legal duties imposed by law upon the relationship created thereby" then contract principles should be applied)(quoting Malone v. Univ. of Kansas Med. Ctr., 220 Kan. 371, 375-76, 552 P.2d 885, 889 (1976)). IFR's motion for summary judgment on Navair's tortious interference claim is GRANTED.[7]

C.  FRAUD

Navair's third claim against IFR is for fraud.  Navair alleges IFR committed fraud when IFR "intentionally, or recklessly, represent[ed] to Navair that it was the exclusive distributor for the IRIS Program when they had no intention [of] fulfilling their representations and promises." (Doc. 79 at 13.)  Specifically, Navair alleges three instances of fraud: 1) IFR "entered into the extension agreement without the present intent to perform;" 2) IFR "fraudulently represented to [Navair] and to the DND that plaintiff was the distributor with respect to the IRIS Program while denying the

_____

[7]  In any event, Navair has presented no evidence of malice on IFR's part.  On the contrary, the evidence, even when viewed in favor of Navair, demonstrates that IFR made every effort to accommodate Navair's requests.  Therefore, even in the absence of a breach of the contract claim, there would be no dispute of material facts and IFR would be entitled to summary judgment as a matter of law.

-15-

existence of an agreement to extend the IRIS Program Agreement;" and 3) IFR's "representations as to the status of the IRIS Program Agreement were intentionally misleading in that they did not mention the claimed deadline of January 31, 2003." (Doc. 88 at 16.)  IFR moves for summary judgment on Navair's fraud claim contending Navair has not pointed to any evidence of an untrue statement of material fact, which IFR knew to be untrue or with reckless disregard at the time the statement was made and upon which Navair justifiable relied. (Doc. 85 at 18.)  For the following reasons, the court finds Navair's fraud claim to be wholly lacking in evidentiary support and especially unmeritorious.

In <u>Wilson v. Meeks</u>, the Tenth Circuit discussed Kansas' elements for proving fraud:

> Actionable fraud includes an untrue statement of material fact, known to be untrue by the person making it, made with the intent to deceive or recklessly made with disregard for its truthfulness, where another party justifiably relies upon the statement and acts to his injury. The injured party must have been deceived by, and have relied upon, the defendant's misrepresentations in order to recover damages for fraud. The injured party's reliance on a fraudulent misrepresentation must be reasonable, justifiable and detrimental.

98 F.3d 1247, 1254 (10th Cir. 1996) (quoting <u>Slaymaker v. Westgate State Bank</u>, 241 Kan. 525, 531, 739 P.2d 444, 450 (1987)).  Under Kansas law, fraud also includes the failure to disclose information that one is under a legal or equitable duty to disclose.  <u>Mid Kansas Federal Sav. and Loan Ass'n of Wichita v. Orpheum Theater Co., Ltd.</u>, 810 F. Supp. 1184, 1194 (D. Kan. 1992).

Navair's allegations of fraud fail to satisfy these elements.

-16-

Navair's first allegation, that IFR "entered into the extension agreement without the present intent to perform" is without support. Navair alleges that IFR's "course of conduct, including particularly [IFR's] internal emails regarding extension" creates a issue of fact whether IFR intended to perform under the extension or whether IFR intended to allow Navair a reasonable time to complete the IRIS sale. The email communications Navair is referring to show only that, beginning January 23, 2003, IFR learned Navair would not be able to complete the IRIS sale by the end of January as previously communicated.  The emails show IFR was frustrated with what it perceived to be continuous requests for extension by Navair.  The emails do not, in any way, show IFR induced Navair to rely on anything other than the December Agreement and what IFR perceived to be an agreed extension of the December Agreement to January 31, 2003. Contrary to Navair's position, the emails actually show IFR fully intended to perform and that it was Navair who indicated it could not perform.

Navair's second allegation, that IFR fraudulently represented to Navair that Navair "was the distributor with respect to the IRIS Program while denying the existence of an agreement to extend the IRIS Program Agreement" also lacks support.  Navair has not pointed to any evidence that when IFR represented to Navair in mid-January that Navair was the distributor, it was an untrue statement by IFR.  Navair specifically asked IfR to write the letter stating Navair was the distributor.  It is uncontroverted that IFR has always contended Navair was the IRIS distributor until IFR terminated the relationship at the end of January, 2003.  Therefore, at the time IFR made the

communication at issue on January 15, 2003, at Navair's request, it was not making an "untrue statement of material fact" and Navair's second allegation of fraud also fails.

Finally, Navair's third allegation of fraud, that IFR's "representations as to the status of the IRIS Program Agreement were intentionally misleading" because IFR did not mention its "claimed deadline of January 31, 2003," also fails.  Navair alleges that while IFR's representations may have been technically true, because IFR did not represent in IFR's letter to the Canadian Department of National Defense that IFR intended to end its relationship with Navair on January 31, IFR's letter was misleading.  This is nothing more than a weak fall-back position in the event Navair's first and second arguments fall flat, which they have.  The uncontroverted evidence shows that IFR did not decide to terminate its relationship with Navair until Navair communicated to IFR that the IRIS sale would not be awarded for another five to six weeks.  Thus, at the time the statements were made, they were not made with knowledge of their untruth or with reckless disregard for their truth.  Navair has failed to point to evidence showing it could satisfy the elements of a fraud claim.  Therefore, IFR's motion for summary judgment on Navair's fraud claim is GRANTED.

D.  NEGLIGENT MISREPRESENTATION

Navair's fourth claim against IFR alleges negligent misrepresentation.  Navair contends IFR was negligent when it "supplied false information for the guidance of Navair regarding the exclusive distributorship relationship, and specifically, [IFR's] intentions with respect to the IRIS Program."  (Doc. 79 at 14.)

-18-

Navair moves for summary judgment on this claim, contending Navair cannot show a breach of a legal duty by IFR.

To succeed on a claim of negligent misrepresentation, a plaintiff must show that "in the course of business, profession, or employment, or in any other transaction in which [the defendant] has a pecuniary interest, [the defendant] supplies false information for the guidance of others in their business transactions because [the defendant] failed to exercise reasonable care or competence in obtaining or communicating the information." Crandall v. Grbic, 138 P.3d 365 (Kan. Ct. App. 2006) (citing Mahler v. Keenan Real Estate, Inc., 255 Kan. 593, 604, 876 P.2d 609, 616 (1994)). Thus, a claim for negligent misrepresentation requires a plaintiff to prove that: 1) the defendant made a false statement regarding a transaction in which he or she had a pecuniary interest; 2) the defendant failed to exercise reasonable care to ascertain or communicate the accuracy of the statement; 3) the plaintiff justifiably relied upon the statement; and 4) the plaintiff thereby incurred a loss. Dill v. Barnett Funeral Home, Inc., No. 90,653, 2004 WL 292124 (Kan. Ct. App. Feb. 13, 2004).

In Kansas, the tort of negligent misrepresentation applies only to cases of misrepresentation of factual, commercial information and not to statements of future intent. Bittel v. Farm Credit Servs. of Cent. Kansas, P.C.A., 265 Kan. 651, 962 P.2d 491 (1998). An essential element of negligent misrepresentation is that the information supplied is false. Dunn v. First Nat. Bank of Olathe, No. 92,543, 2005 WL 1277949 (Kan. Ct. App. May 27, 2005). In Kansas, negligent misrepresentation, like fraud, includes an element of justifiable reliance. Sanders v. Hillcrest Bank, No. 90,082, 2004 WL 895362 (Kan.

-19-

Ct. App. Apr. 23, 2004).

Navair fails to identify any evidence creating an issue of disputed fact over the <u>falsity</u> of any information given by IFR. Again, Navair points to the January 15, 2003 letter from IFR to the Canadian Department of National Defense wherein IFR stated that "Navair is the authorized supplier." However, as discussed above, at the time the letter was sent, Navair <u>was</u> the authorized supplier and Navair has pointed to no evidence that IFR was misrepresenting anything by stating so. Again, it is uncontroverted that IFR did not end its relationship with Navair until the end of January, after being informed by Navair that the IRIS Program contract could not be secured for another five to six weeks. IFR's motion for summary judgment on Navair's negligent misrepresentation claim is GRANTED.

E.  BREACH OF FIDUCIARY DUTY

Navair's final claim against IFR is for breach of fiduciary duty. Navair alleges that IFR "breached their fiduciary duty when they failed to honor their exclusive distributorship agreement and failed to act in good faith with due regard to the interest of Navair." (Doc. 79 at 14.)  IFR moves for summary judgment on this claim contending Navair cannot show the existence of a fiduciary relationship between Navair and IFR.

In Kansas, to prove a claim for breach of a fiduciary duty, a plaintiff must show that a fiduciary relationship existed between the plaintiff and the defendant and that the defendant breached that fiduciary duty. <u>Hawkinson v. Bennett</u>, 265 Kan. 546, 579, 962 P.2d 445, 459 (1998). A fiduciary relationship is:

any relationship of blood, business, friendship

-20-

> or association in which one of the parties places
> special trust and confidence in the other.  It
> exists in cases where there has been a special
> confidence placed in one, who, in equity and good
> conscience, is bound to act in good faith and
> with due regard to the interest of the one
> placing the confidence.  A fiduciary has the duty
> to act in good faith and with due regard to the
> interests of the party placing confidence in him.

Id. at 589, 962 P.2d at 459 (quoting with approval the jury

instructions used by the trial court).  Both parties also cite the

Kansas Supreme Court case of Denison State Bank v. Madeira, 230 Kan.

684, 640 P.2d 1235 (1982).  In Denison, the court stated:

> A fiduciary relationship imparts a position of
> peculiar confidence placed by one individual in
> another.  A fiduciary is a person with a duty to
> act primarily for the benefit of another.  A
> fiduciary is in a position to have and exercise,
> and does have and exercise influence over
> another.  A fiduciary relationship implies a
> condition of superiority of one of the parties
> over the other.  Generally, in a fiduciary
> relationship, the property, interest or authority
> of the other is placed in the charge of the
> fiduciary.

230 Kan. at 692, 640 P.2d at 1241.

Navair alleges that because of the length of the manufacturer-

distributor relationship of the parties (approximately thirty years)

and because of the superior bargaining position IFR was in compared

to Navair, a fiduciary relationship should be found.  Navair states

that because IFR was "in a position of control over the IRIS Program

order," Navair could not protect itself and therefore did "place

peculiar confidence" in IFR.

It is clear to the court that a fiduciary relationship did not

exist between the parties.  Navair has pointed to no facts tending to

show such a relationship.  Navair alleges nothing more than a routine

contract, wherein one party, as manufacturer, and therefore with control over the product, searches for another party to distribute that product for them. IFR had no "duty to act primarily for the benefit of" Navair and Navair does not allege facts that could show such a duty. IFR's motion for summary judgment on Navair's breach of fiduciary duty claim is GRANTED.

## III.   CONCLUSION

For the above reasons, plaintiff's motion for partial summary judgement (Doc. 80) is DENIED and defendants' motion for summary judgment (Doc. 84) is GRANTED. Defendants' objections to magistrate order and motion for review, or, in the alternative, to certify a question to the Kansas Supreme Court (Doc. 66) has been rendered moot and is therefore DENIED. The clerk shall enter judgment in accordance with Federal Rule of Civil Procedure 58.

A motion for reconsideration of this order is not encouraged. Any such motion shall not exceed 5 double-spaced pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp, 810 F. Supp. 1172, 1174 (1992). The response to any motion for reconsideration shall not exceed 5 double-spaced pages. No reply shall be filed.

IT IS SO ORDERED.

Dated this   6th   day of December, 2006, at Wichita, Kansas.

S/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE